UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

CENTRAL HARLEM COMMUNITY (DISTRICT 10),
SILENT VOICES UNITED INC, ST. NICHOLAS
HOUSES RESIDENT ASSOCIATION, TULINDE LLC,
BREAKING THE CHAINS OF YOUR MINDS,

      Plaintiffs,

**24 CV 1606**
CV

      V

**JURY TRIAL DEMANDED**

CITY OF NEW YORK, JAMES EQUITIES LLC,
DOUGLAS C. JAMES, JOHN AND JANE DOES, who
are responsible for the latest decisions of 2201 Luxury
Condominiums,

      Defendants,

-----------------------------------------------------------------------X

**COMPLAINT**

Plaintiff Central Harlem Community (District 10), by and through, in conjunction with, and

supported by plaintiffs Silent Voices United Inc., St. Nicholas Houses Resident Association,

Tulinde LLC, and Breaking The Chains of Your Mind, jointly and collectively submits this

Complaint, alleging herein as follows:

**NATURE OF ACTION**

1. This is an action submitted on behalf of the above parties seeking injunctive relief

pursuant to **Federal Rules of Civil Procedure, Rule 65,** declaratory relief for judicial review of

an administrative decision to ascertain whether discrimination, and equal protection rights with

respect to the **Fair Housing Act, 42 U.S.C. Section 3601**, et. Seq., have been violated by defendants, as a result of an imminent decision to turn an alleged abandoned Luxury Condominium (located at 2201 Adam Clayton Powell Jr. Blvd.) (hereinafter "**The Development**") into a Shelter for a class of individuals having no connection to the immediate community, over Black and Brown residences, therewith, and on the verge of being misplaced far from the Harlem community. This action represents the plaintiffs and all others similarly situated pursuant to **Federal Rules of Civil Procedure, Rule 23(a)(1), (2) and (4), and Rules 23(b)(2) and (3)**.

**2.** The defendants City of New York (hereinafter "CONY"), James Equities LLC (hereinafter "JELLC"), Douglas C. James (hereinafter "DCJ") and other individuals not yet named, as they have not been ascertained, actions were done in secret, which hindered any opportunity for a specific class of individuals, namely Plaintiffs Saint Nicholas House Association residents (hereinafter "SNHA") from any opportunity of access to **The Development**, thereby prohibiting compliance of equal protection rights and discriminating against them in violation of **The Fair Housing Act** ("FHA"), and certain **Civil Rights** and afforded privileges.

**3.** Initially, these claims were the result of a clandestine intent to "temporarily" house the influx o[f] out of the country migrants in the entire 54 units (converted, whether legal or illegally, from 34 units for that specific reason), in violation of **Equal Opportunity Laws**, until the plaintiffs and community members rallied against it. One of the central objectives of the FHA, when Congress enacted it is 1968, was to prohibit race discrimination in rentals of housing, in particularly via notification of the availability of such. Nevertheless, more than 30 years later, race discrimination in housing continues to be a problem. It became clear that the defendants in this case tried to disguise their discrimination by not informing the community about the availability of housing in **The Development**, thus violating afforded rights and privileges.

2

4. The fact that the prevention of migrants into **The Development** "may" have been diverted, did not remedy the community's problem of seeking to house folks within the immediate area in dire need of that housing space. There is unequivocally a plan by CONY via the Mayor's office, to move forward any day with shelter measures and or housing for a specific class of individuals, is stark disregard to the immediate needs of the known community housing crises. Nevertheless, this is why an injunction, perhaps an interim injunction, must be issued until the matters of this claim can be resolved amicably.

5. Upon further ascertaining of documents and information sought by plaintiffs, additional background information, case law precedents and supporting documents shall be made available in a Memorandum of Laws and Facts, and supported by the necessarily required affidavits, all of which would need to be submitted at a later date due to the imminent intent to obtained an injunction to cease any housing at **The Development**. Incorporated by reference, in this document is a request for an extension pursuant to **Federal Rules of Civil Procedure, Rule 6(b)(1)(A)**. Thus, it is so prayed that any extended time needed, be allotted.

## JURISDICTION AND VENUE

6. This Court has jurisdiction under **Title 28 U.S.C. Section 1331, 1343**. A declaration of the plaintiff's right is sought pursuant to **Title 28 U.S.C. Section and 2202; Title 42 U.S.C. Section 3604**, The **Fair Housing Act Section[s] 3601**, et. Seq., **Article 2A, of the Equal Rights to Publicly-Aided Housing, New York Civil Rights Law Section 18-D (2)**.

7. This Court has jurisdiction pursuant to **Title 28 U.S.C. Section 1654**, in that at least one Plaintiff is proceeding **pro-se**, until or if counsel is deemed appropriate.

3

**8**. Venue is proper in this district pursuant to **Title 29 U.S.C. Sections 1391(b)(2), and (e),** because the Defendants do business in this Judicial District and/or because a substantial part of the events or omissions giving rise to these claims occurred in this Judicial District.

## PARTIES TO ACTION

**9**. Plaintiff Central Harlem Community (District 10) (hereinafter "CHC"), are Central Harlem residents making up the mass of the plaintiffs in this action.

**10.** Plaintiff Silent Voices United Inc. (hereinafter "SVUI"), is a **Non-Profit 501(c)(3)** organization, maintaining its principal place of business in Harlem New York, and represents the Harlem community as a whole, being the voice of the people when their voices are not being heard, whose Executive Director, is Tiffany S. Fulton, and proceeding herein as the Lead spokesperson for CHC.

**11**. St. Nicholas Houses Resident Association (hereinafter "SNHRA"), is a Housing base organization for the Saint Nicholas Houses, located in Harlem New York making up a large portion of the plaintiffs in this action, whose spokesperson is the Saint Nicholas Housing President Leslie Johnson.

**12**. Tulinde LLC ("TLLC"), is a Limited Liability Corporation, maintaining its principal place of business in Harlem New York, having an interest in this action, in that it seeks to ensure the rights and privileges of the Harlem community as a whole, whose Executive Director is Gilda D. Gillim, and proceeding herein as a spokesperson for CHC.

**13**. Breaking the Chains of Your Mind ("BTCOYM"), is a private behind the scenes establishment maintaining a principal place of operation in Harlem New York, with the sole

purpose of helping Harlem residents who cannot help themselves, whose Executive Director is Ruth McDaniels, and proceeding herein as a spokesperson for CHC.

**14.** Defendant CONY, is a Municipal Corporation of the State of New York, having an invested interest in **The Development** that is i[n] controversy herein, and being liable for the claims brought by Plaintiffs.

**15.** Defendant JELLC, is a Delaware Foreign Limited Liability Corporation, with a registered principal place of business at 1093 Sterling Place, Brooklyn, New York 11213, said to have an invested interest in **The Development** that is i[n] controversy in this action, being liable for the claims brought by plaintiffs, and is being sued as a result of claims set out in the action.

**16.** Defendant DCJ, is the Founder and alleged CEO of JELLC, and also a "claimed" owner of **The Development** in controversy, with a registered principal place of business at 1093 Sterling Place, Brooklyn, New York 11213, and is sued in his individual and official capacity.

## STATEMENT OF FACTS

**17.** On January 16th, 2024, a representative of SVUI, witnessed a clandestine moving of bunkbeds into **The Development** at 2201 Adam Clayton Powell Jr. Blvd., New York, New York 10027. The actions were very suspicious because **The Development** had been unoccupied for almost a decade, and the windows were covered in a way that added to the suspicion.

**18.** When movers were approached and questioned on January 17th, 2024, about the continued activity, a woman who turned out to be Wanda Berroa (berroaw@icahnhouse.org), Programs Director of Children's Rescue Fund, a non-profit organization, had stated that the building was slated to house the newly influx of migrants into Harlem New York. An immediate concern arose and quick action had been taken to prevent that from happening.

**19.** The Executive Director of SVUI reached out to several Harlem elected officials to get to the bottom of the matter, in part because there was never any rent availability signs or information that **The Development** had vacancy of which Harlem residents could have inquired about, or that notice had been given to the adequate officials, such as Community Board 10. Neither had any of the community advocates or the community itself notified, that migrants were soon to be housed in **The Development**.

**20.** The Executive Director of SVUI began a campaign consisting of email submissions, official office visits and ultimately a call for a peaceful community gathering as it became more and more apparent that no one knew "anything". The first and only reply of importance addressing the matter at hand, came via an email message dated February 9th, 2024, it was confirmed that The Mayor's office was moving forward with a shelter for migrants. The email stated:

> "Due to the ongoing asylum seeker crises the city will be opening a sanctuary shelter located at 2201 Adam Clayton Powell Blvd, Manhattan, NY 10027. The site will be for families with children and will have a capacity for roughly 54 rooms. The site will be operated by DHS along with not-for-profit partner Children's Rescue Fund and it will be in operation as soon as Monday, February 12th"

**21.** It became very confusing about the Mayor's office's role in **The Development**, how they were actually even able to carry out such a task, and more importantly why no one within the community of Harlem, Harlem advocates or otherwise, in their official or individual capacities were even made known of such a project. A community meeting became of great importance as there were so many unanswered questions.

**22.** On February 15th, 2024, a small peaceful community gathering was conducted, joined by the heads of CHC, SNHRA, TLLC, BTCOYM and held in the Community Center of SNHRA. Surprisingly, the Mayor of New York ("The Mayor") showed up, and a discussion

occurred, with a promise by him to revealed more about his office and CONY's intention in a second meeting. However, at that time the Mayor did announce "that no migrants would be housed in [**The Development**]", which had been recorded by SVUI and broadcasted throughout several News media outlets.

23. On February 18th, 2024 a peaceful community gathering was held at the Williams Institutional CME Church, additional non-profit and concerned organizations, along with many more concerned Harlem community members attended in hopes to get the answer needed. The Mayor showed up as promised, bringing with him several of his constituents, namely the Department of Homeless Services ("DHS"), and the Department of Social Services ("DSS"), in an attempt to explain away the lack of transparency and new intentions of **The Development** via his office and CONY, without any consideration for the "impact", "safety", and "mental stability" it was currently and will continue to have on the Harlem community. CHC meets an identical criterion as any family or individual slated to occupy **The Development**, in that they have families, and are in imminent need of sheltering and/or home placement, due to an inevitable losing of their own residencies.

24. On February 23rd, 2024, a peaceful rally was formed out in front of the Development, which resulted in the attendance of the true owner of **The Development**, the revelation of facts as to why it was unoccupied for so many years (which was a pending civil litigation, totally unrelated to this action, in this very Court under **Docket #23-CV-6058 (VSB)** that dates back to 2015), and a scandal that sought to deprive the true owner of repossessing **The Development,** after having it fraudulently stolen from him.

25. As it became clear that neither the CONY via The Mayor, JELLC, DCJ or any one having direct or indirect authority over the decision making of **The Development**, in stark

disregard to the Harlem community's pleas, SVUI along with CHC, SNHRA, TLLC, BTCOYM, initiated a collaborate effort to file this injunction to prevent any tenant housing at **The Development**, until the claims raised and relief sought can be adequately considered consistent with **Due Process** of Law.

## LEGAL FRAMEWORK

**The Fair Housing Act:**

    **Discriminatory Acts:**

    **26.** Under **Title U.S.C. Section 3604**, there is a unique discrimination mandate with respect to the rental of housing and other prohibited practices. The FHA **Section 3601**, et. Seq., prohibits discrimination by direct providers of housing, such as landlords and real estate companies as well as other entities, such as municipalities, banks or other lending institutions and home owner insurance companies whose discriminatory practices make housing unavailable to persons because of their:

- Race or color
- Religion
- Natural origin
- Familial status
- Disability

    **27. Article 2-A, Equal Rights to Publicly-Aided Housing, New York Civil Rights Law Section[s] 18 [A-E],** unequivocally prohibits the discrimination of housing accommodations. In the case at bar, a clear showing of discrimination can be made, in that the defendant's maliciously and intentionally, chose to conceal and thereby select another class of individuals for hosing in **The Development**, over the housing of plaintiffs, who, although different in class, were similar in housing needs. All New Yorkers deserves fair and equal access to housing. The Federal

FHA, the **New York State Human Rights Law** ("NYSHRL"), and the **New York City Human Rights Law** ("NYCHRL") all prohibit housing discrimination. The defendants' discriminatory customs, patterns, and actions deprive plaintiffs of their right to equal access to housing with their clandestine and exclusionary acts of seeking to house a different class and individuals.

28. The fact of the matter is that the residents of Harlem are in dire need of the opportunity to occupy space in **The Development**, where still falling on death ears in violation of The FHA and **Equal Opportunity** laws. It is important to note the CONY's involvement in this matter, whether individual or via the Mayor's office, without doubt, are familiar with the History of the laws that govern the claims made by the Plaintiffs, but yet appear to do nothing about it. The plaintiffs do not attempt to give this Court a history lesson on the FHA, but in an attempt to establish standing and remedial favor, ask that judicial notice be given to the statutory framework. The FHA was passed partially in response to (1) the social unrest of the mid-1960s; (2) the report of the **National Advisory Commission on Civil Disorders**, commonly known as **"The Kerner Commission"**, which warned that the Unted States "is moving toward two societies, one black, one white – separate and unequal"; and (3) the April 4th, 1968 assassination of Martin Luther King, Jr. It begins, FHA **Section 3601**, by declaring that "[i]t is the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States."

29. FHA **Section 3604** essentially outlaws' discrimination in selling or in this case renting housing based on "race, color, religion, sex, familial status, or national origin." Hence, the FHA **Section 3608(a)** delegates to the Secretary of **Housing and Urban Development** ("HUD"), "[t]he authority and responsibility for administering the Act." FHA **Section 3608(d)** provides, in part, that "[a]ll executive departments and agencies shall administer their **programs and activities relating to housing and urban development** . . . in a manner affirmatively to further [fair

housing]." FHA **Section 3608(e)(5)** directs the HUD Secretary to "administer the programs and activities relating to housing and urban development in a manner affirmatively to further the policies" of fair housing. As the recipient of federal housing funds ("Program Participant), CONY, and any "organization" directly or indirectly operating "any programs" in conjunction therewith, is obligated "affirmatively to further the policies" of fair housing," and pursuant to **42 U.S.C. Section 5304(b)(2)**, to certify that it "will." Thus, any defendant party or parties to these claims must be held accountable for their actions.

## INJUNCTIVE RELIEF

**30**. The disregard of equal protection laws, coupled with discrimination, and the blatant disregard of the FHA, has already, and no doubt will continue to cause irreparable harm to plaintiffs, as did the loss of **First Amendment** Freedoms established in **Roman Catholic Diocese of Brooklyn v. Cuomo**, 592 U.S. --- (2020) (per curiam) (citing **Elrod v. Burns**, 427 U.S. 347, 373 (1976). The practices of depriving residents in any community, much less the Harlem community at issue in this action, infringes upon any equal opportunity to housing, and will continue to cause irreparable harm and suffering, if an injunction is not issued.

## JURY DEMAND

**31**. Plaintiffs hereby demand a jury trial, if the relief in the form of obtaining adequate housing for immediate Harlem residents, consistent with their needs, is not given.

## CONCLUSION

**WHEREFORE**, based upon the incorporated facts and laws, it is prayed that the Court issue a preliminary injunction directing defendants to cease from their intentions of housing "any" tenants in the 2201 Adam Clayton Powell Jr. Blvd., New York, New York 10027, known herein as **The Development**, until this matter is resolved amicably and fully.

**DATED**: February 27th, 2024

**FOR CENTRAL HARLEM COMMUNITY (District 10) PRO-SE**

Tiffany S. Fulton
Silent Voices United Inc.
Executive Director
352 West 117th Street
New York, New York 10026
Silentvoicesunitedinc@gmail.com
(646) 645-9110
**LEAD** Spokesperson for CHC, et. al

**Gilda D. Gillim**
Tulinde LLC
Executive Director
P. O. Box 234
New York, New York 10026
Desdemona72@gmail.com
(212) 814-9109
Spokesperson for CHC et. al.

**Leslie Johnson**
President, St. Nicholas Houses
Resident Association
250 West 131 Street
New York, New York 10027
Lesliethebest@icloud.com
(646) 353-9348
Spokesperson for CHC, et. al.

**Ruth McDaniels**
Breaking The Chains of Your Mind
Executive Director
110 West 137th, Street
New York, New York 10030
Breakingchains.org@gmail.com
(347) 736-2179
Spokesperson for CHC, et. al.